# EXHIBIT A

**CASTELLANI LAW FIRM, LLC**
David R. Castellani, Esquire - ID #: 023691991
450 Tilton Road, Suite 245
Northfield, New Jersey 08225
(609) 641-2288
Attorneys for Plaintiff

| | |
|---|---|
| NICK SIMPKINS, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-Cumberland |
| Plaintiff(s), | DOCKET NO: Cum-L-000026-19 |
| v. | CIVIL ACTION |
| LUXOTTICA RETAIL, ERIK RIENECKER, LOUIS CHESTMAN. JOHN DOES 1-10, | **COMPLAINT** |
| Defendant(s), | |

Plaintiff Nick Simpkins currently residing in the County of Cumberland and State of New Jersey, by way of Complaint against the Defendant states:

### FIRST COUNT

1.)   On or about March 23, 2018, the Plaintiff was an employee of the Defendant Luxottica Retail for 17 years when he was terminated.

2.)   The Plaintiff had a medical condition known as polycythemia vera, a blood dyscrasia. The medical condition required him to take off time from his employment for treatments related to his medical condition. Plaintiff was an employee in a protected class under New Jersey Law Against Discrimination, based upon a disability and/or perceived disability.

3.)   Approximately two weeks after July 24, 2014, the Plaintiff reported a relationship he had with another employee, Laura Martin, to his supervisor, Defendant Erik Rienecker, per company policy requiring an employee to report any relationship that develops with an employee under your supervision with your supervisor. At that time, the employee did not work in Plaintiff's region, but in New York City. In addition, he had no direct supervision of her as an employee.

1

4.) In or around October of 2017, the Plaintiff took FMLA leave of absence through Cedric, a private company due to the need for treatments from his blood dyscrasia medical condition/disability.

5.) On March 12, 2018, Plaintiff returned to work from his FMLA and was advised by Louis Chestman, Plaintiff's supervisor, that he would like to meet with him and he wanted one of Plaintiff's peers to meet with him and spend some time with the Plaintiff to get him up to speed with the Plaintiff's job given changes that had taken place since he was out on his leave of absence and to go over expectations and practice and observe his visits in the stores that they serviced.

6.) The week before his termination on March 23, 2018, the Plaintiff spoke with Alison Zacher the senior H.R. manager for Human Resources. At that time, the Plaintiff was questioned about his drinking of alcohol (which he does not do because of his medical condition) and his previous relationship with Laura Martin a former employee from four (4) years prior.

7.) Thereafter, the Plaintiff received a call from Defendant Erik Rienecker. Mr. Rienecker told the Plaintiff that he thought he was helping him by saying he didn't know anything about the relationship Plaintiff had previously reported to his supervisor four (4) years prior. Mr. Rienecker indicated to the Plaintiff that he realized that he might have hurt him.

8.) The Plaintiff is aware of similar past issues with H.R. regional manager Heather Flegal, who was drunk at a company meeting and was inappropriately touching the Plaintiff so much so that they had to escort her to her room so she would not further embarrass herself or the company. Another time, at an Oakley branding training in California, Ms. Flegal was so intoxicated she passed out on the couch at the W in Hollywood. This was also swept under the rug and Ms. Flegal received no discipline.

2

9.) It is further alleged that Plaintiff's supervisor, Erik Rienecker, had a prior relationship with Kristy Begley Barnes. Both were married. He became a supervisor and the relationship continued for some time. Eventually Ms. Begley Barnes left the company to pursue other opportunities. The Plaintiff alleges that Mr. Rienecker did not disclose the relationship and he was never disciplined.

10.) Between 2016 and 2017, the Plaintiff was having many health issues and missing a lot of time from work and unable to work full days. He was diagnosed with diabetes in 2016 and in January of 2017 he was diagnosed with the polycythemia vera, a blood dyscrasia.

11.) In September of 2017, the Plaintiff met with Defendant Louis Chestman at the Monmouth Mall. When Mr. Chestman asked about his health, the Plaintiff shared what he felt comfortable; however, Mr. Chestman told the Plaintiff that he needed to think about what was best for his health and questioned the need for time off as a reasonable accommodation. The Plaintiff shared at that time with Mr. Chestman that he might need to take a leave of absence.

12.) The Plaintiff alleges that the Defendant's reasons for terminating his employment in March of 2018 were pre-textual having occurred over four (4) years prior and other employees similarly situated were not disciplined or subjected to termination like the Plaintiff.

13.) Plaintiff alleges he was terminated for utilization of medical leave related to his disability/handicap and in retaliation for asserting his rights as an employee with a disability under New Jersey's Law Against Discrimination for requesting a reasonable accommodation in the form of medical leave and time off from work to treat his disability/perceived disability and handicap.

14.) The Defendant's actions were intentional and deliberate and as such Plaintiff is entitled to an award of punitive damages.

3

15.) The Defendants Erik Rienecker and Louis Chestman were Plaintiff's Supervisors who aided and abetted in the discrimination and retaliation of the Defendant Luxottica through false statements and misrepresentations.

16.) As a direct and proximate result of the Defendants' violations of New Jersey Law Against Discrimination as set forth above, the plaintiff has been wrongfully terminated, has suffered monetary damages, past and future wages and benefits, mental anguish, humiliation, embarrassment, also benefits and other such losses all to his detriment.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, interest, costs of suit, attorneys' fees, and such other relief as the court deems just and equitable.

## SECOND COUNT

1.) Plaintiff hereby repeats and incorporates each and every allegation contained in the First Count as though herein set forth at length.

2.) The Defendant Luxottica employed more than 50 employees within a five mile radius from Plaintiff's location of employment.

3.) Plaintiff had worked more than one (1) year before taking medical leave and or requesting the same.

4.) The Defendants actions in terminating the Plaintiff in March of 2018 were in retaliation and interference with Plaintiff's assertion of his rights under the Family Medical Leave Act to take medical leave.

5.) The actions of the Defendants were intentional and deliberate and Plaintiff is entitled to punitive damages.

6.) As a direct and proximate result of the Defendants' intentional actions against the Plaintiff as set forth above, the Plaintiff was wrongfully terminated, has suffered monetary

4

damages, past and future wages and benefits, mental anguish, humiliation, embarrassment, also benefits and other such losses all to his detriment.

### THIRD COUNT

1.) Plaintiff hereby repeats and incorporates each and every allegation contained in the First Count as though herein set forth at length.

2.) Defendant John Doe Employees 1-10 are unknown persons who may be responsible for actions taken against the Plaintiff which, are referenced above.

**WHEREFORE**, Plaintiff, Nick Simpkins, demands Judgment against Defendants, John Does 1-10, for damages plus interest, attorney fees and costs of suit.

### JURY DEMAND

Plaintiff hereby demands trial by a jury on all issues herein.

### DEMAND PURSUANT TO RULE 4:17-1(b)(iii)

Pursuant to Rule 4:17-1(b)(ii), the Plaintiff hereby demands Answers to Uniform C and Uniform C(2) Interrogatories in lieu of service of the interrogatories themselves.

### DEMAND OR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to Rule 4:10-2(b) demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a Judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the Judgment. If so, please attach a copy of each, or in the alternative state, under oath and certification: (a) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) name and address of all

persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

## DESIGNATION OF TRIAL COUNSEL

David R. Castellani, Esquire, is hereby designated as trial counsel in this matter.

## CERTIFICATION UNDER RULE 4:5-1

I, David R. Castellani, Esquire, by certifying, pursuant to New Jersey Court Rule 4:5-1, that to the best of my knowledge, the claims raised herein are not the subject of any other action pending in any Court of the subject of any arbitration proceeding, and no such other action or arbitration is contemplated.

I certify that the foregoing statements made by me are true and accurate to the best of my knowledge. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment for perjury.

Date: 1/9/19

DAVID R. CASTELLANI, ESQUIRE
Attorneys for Plaintiff(s)